The first case on our call this morning is agenda number 13. Case number 103-620 and 103-639, consolidated. In re Leona W. A minor. Ms. Falls, you ready to proceed? I am, thank you, sir. May it please the court. Assistant State's Attorney Nancy Falls on behalf of the people of the state of Illinois. I will be addressing the jurisdictional issue in this case, as well as the application of Arthur H and Madison H. Assistant Public Guardian Cass Plain on behalf of the minor, Leona W, will be addressing the motion in limine regarding the other sibling evidence, as well as the propriety of the unfitness and termination rulings. We intend on splitting our time ten minutes apiece in the opening and five minutes apiece in rebuttal. Your honors, some cases are close as to whether or not there was error below. This is not one of those cases. Despite the fact that the appellate court of the first district had two separate opportunities to decide on the merits, the issue that was actually before it, that would be the unfitness of biological father and the termination of his parental rights as to Leona, the appellate court failed to do so. Even after this court issued a supervisory order specifically instructing the court to review their decision in light of your decision in Ray Arthur H, the appellate court still failed to address the merits of the issue actually before it. So that leaves us here in January of 2008, Leona turned 11 in October. She went into foster care straight from the hospital when she was 11 days old. And still, there has been no review of the order that would have freed her up for adoption. Instead, years have been spent looking at an adjudication order that was entered on February 25th of 1997, in order that the people and the public guardian agree was not appealable in the termination of parental rights appeal. In addition, the first district and another division later, after this case was decided, and the second district, and the third district, and the fourth district, have all held that adjudication orders are not appealable during a termination of parental rights appeal. The fifth district has yet to address this specific issue. The adjudication order is appealable, but it is appealable after the dispositional order is entered. And it must be appealed 30 days after the dispositional order. That order, in this case, was entered on April 29th of 1997. Which means, had Biological Father wanted to appeal the adjudication order, that was the time to do so. Biological Father, in this case, did not do so. There was nothing in his notice of appeal on this case saying that he was appealing the adjudication order. The adjudication transcript wasn't even in the record that was reviewed by the appellate court. That transcript is only a part of this record, because I made a motion to supplement the record with it in May of last year. Moreover, Biological Father stipulated to the facts that form the foundation for the adjudication. So there is no question that Biological Father was not raising any issue as to the adjudication order. It's your position, Ms. Falls, that if this court agrees with the jurisdictional argument that you've just articulated, that there's no need to go any further. Is that right? Yes and no. Yes, jurisdictionally it would take care of it. However, based on the way the appellate court opinion was worded- It never reached the merits of the termination hearing. Exactly. So we wouldn't have to go any further as it relates to this appeal, but a remand would be necessary to the appellate court to reach the merits of the termination hearing? Although that is what we asked for in our brief, that is not what I'm asking for today. Looking at the best interest of Leona, a child who is over 11 years of age, and given the procedural history of this case, going back to the appellate court yet again may not be the answer in this case, unless, of course, you remanded them with very specific instructions, and very specific instructions, again, delineating what your holdings in In Re Arthur H and In Re Madison H actually mean in the terms of this case. Which, given the length that this case has been in the system and the age of Leona, may not be the most judicious use of the court's time and for Leona. Ms. Falls, the public guardian says that since the three plus years since the court terminated the parental rights, after the best interest hearing, things have changed regarding the sex abuse, perhaps the alleged sex abuse of the minor. So do you think that a whole new hearing is required here on best interest? I don't necessarily believe that there needs to be a best interest hearing. There definitely needs to be a permanency hearing. I don't believe in the information that I have, which is not in the record, because the record you have in front of you stops four years ago. There has been no change in biological father's inability to parent Leona. So there would be no need to determine whether or not his rights should be terminated. But in any event, some look at the situation as it's currently constituted, needs to be done, because yes, four years have gone by since the termination. Is the termination issue raised in the briefs before this court? It was brought before this court by the public guardian, because they are across Appalant, as far as the unfitness finding regarding subsection B. And it was also brought before the court by the public defender on behalf of the biological father. So my issues don't hit that directly. So I guess I'm still a little confused as to the fact that the appellate court did not raise the issue. You're saying a remand with specific advisory suggestions to the appellate court how to handle the termination issue? Are we to handle the termination issue in this court if we agree with you that there's no jurisdiction? Quite frankly, when you issued your first supervisory order, I thought that the appellate court would look at In Re Arthur H. and understand that when you are at adjudication, you don't look at whether or not the parent is neglectful. And they would realize we weren't supposed to look at that. Now we will decide what we're actually here to look at, which is whether or not the unfitness finding was proper. And whether or not his parental rights were terminated properly. And they didn't do that. Which is one of the problems procedurally with this case. I do believe that if you look at the record, the record is replete with evidence that would allow you to determine that the trial court's ruling that biological father was unfit was proper, was not against the manifest rate of the evidence, and that it was proper with the evidence before the trial court at that time to terminate biological father's parental rights. So I guess what I'm saying is, obviously you're the Supreme Court. And if you want to look at this case, you can look at this case. Either way, a determination on the merits needs to be made. What you're saying is that this adjudication order was entered ten years ago. Yes. So a lot of time has gone by. Yes. And I guess what you're asking us, if we feel the appellate court made a mistake in addressing that old adjudication order, that let's stop the clock on this. And in the best interest of the child, for the determination order was valid or not. Given the unique situation and the unique procedure and what happened in this one case, if that's what the court decides to do, the people would have no problem with that. But that's, I mean, this is certainly not a situation where we're asking this court to, as a matter of course, conduct direct appeals in these types of cases. However, given the fact that you've already given the appellate court one opportunity with specific directions as to what they should do, and they didn't do it, and given that what we're ultimately here for is the best interest of Leona, if the court wants to address it, we would not have any problem with that. The record is in front of you. You do have the authority to do anything that the trial court could have done. And it's kind of hard to say over 11 years later, let's do things as expeditiously as possible for Leona, when we've already spent 11 years and she still doesn't have permanency. But given what we have right now, that could be the best thing that could be done here. Did the appellate court seem to think that the trial court had no jurisdiction to go forward with the termination hearing because the adjudicatory order didn't contain the requisite findings of fact? I think so. Did the transcript that you alluded to a few moments ago, was that in the record before the case went to the appellate court? No, it wasn't, but the stipulation that was entered, the actual stipulation document is in fact in the record, and it was in the record before the appellate court. So the adjudication stipulation was in the record. So even looking at the fact that the order didn't contain the actual handwritten reason for the adjudication, the adjudication stipulation was there. Biological fathers stipulated to the facts that form the basis for the adjudication. Is there any authority for the appellate court to have found that the trial court had no jurisdiction to go forward? Not that I'm aware of. All of the case law that I've looked at from all of the districts except your own, which hasn't addressed it, has said they could not and would not have a say in the adjudication. I will now turn over the podium to Ms. Plain. Chief Justice, Justices, may it please the court. I'm Assistant Public Guardian Cass Plain, and I represent 11-year-old Leona W, the child in this case. I'll focus my argument on the motion in limine and the unfitness findings. Prior to the unfitness finding beginning, we made an oral motion in limine to exclude evidence of other children that had been returned home to the father, Oscar H. These children were Leona's siblings, and at the time of the termination hearing, they ranged in age from about five to ten years old. The trial court did not abuse its discretion in granting the motion in limine, because the trial court indicated that the grounds of unfitness alleged in this particular petition were grounds M and B. And they related only to Leona and Oscar H's ability to care for Leona. First, in both 2005 and 2006, the appellate court issued an advisory opinion holding that the motion in limine issue was not waived even though Arthur H, I'm sorry, even though Oscar did not make an offer of proof as to what would have been presented regarding the care of Leona's siblings. The appellate court distinguished the case of Inres Jaber W, finding that the trial court knew what evidence would have been excluded. Therefore, it was not necessary for Oscar H to make a offer of proof. The appellate court concluded that the evidence sought to be excluded in the motion in limine consisted of the dispositional orders entered in this case. That ruling by the appellate court is not supported by the evidence. During the argument on the motion in limine, the assistant public defender asked the court to admit evidence regarding the fact that Oscar H had completed reunification services with the other children. The assistant public defender did not simply ask that the one page dispositional orders be taken notice of. Because Mr. H did not make an offer of proof, he did not preserve the record for appeal, and as such, the ruling on the motion in limine should be affirmed. As to the substance of the motion in limine, the appellate court does not explain how the fact that Leona's siblings were returned home to Oscar H is relevant as his fitness to parent Leona. The court disregarded the first district appellate court cases in INRAE-MC in 1990 and INRAE-RM in 1991. Both of those cases held that a parent's ability to care for a sibling is irrelevant to his fitness to parent this particular child. Leona is a unique child. She has numerous special needs. She has a seizure disorder. She has asthma. She has significant developmental delays, which include mild mental retardation. She has an IQ of 53, and she also has ADHD. When Leona was five and a half years old, she functioned at the developmental level of a two-year-old. Mr. H claims that some of Leona's siblings also have some of her special needs. However, the record only Solomon, the youngest boy, had special needs that required some services. But if you look at the November 2000 client service plan, it indicates that Solomon is almost all caught up. Most importantly, however, in the 2002 parental capacity assessment, Mr. H told Dr. Nyland that none of the children in his care have any special needs. So the fact that Oscar H can parent children without special needs is not relevant to whether he can parent Leona with all her extreme special needs. Finally, I ask this court, if you find that the granting of the motion in Lemonade was an abuse of discretion, was an error, I ask that you find it was harmless error. In In Re MC, the first district 1990 case, the court held that because it was clear and convincing evidence that the mother was unfit under grounds M and B, any error in excluding the evidence was harmless. A set forth in my next argument, there was ample evidence that Oscar H was unfit. And as such, I ask the court, if you find that the granting of the motion in Lemonade was error, did you find that it was harmless error? As you have mentioned before, the appellate court did not address the unfitness issue in either the 2005 or 2006 modified opinion. We're asking under rule 366A5 that you do address the unfitness issues, for all the reasons alluded to by the state's attorney. I'd like to set out a brief timeline for you. Leona was not quite seven years old when the unfitness ruling was made in 2003. She's now 11. She's been waiting in the reviewing courts for over four years for permanency. The original appeal in this case was fully briefed in September of 2004. And 15 months later, the appellate court issued its first decision on December 23rd, 2005. Based on, and it, what it did is it reversed the termination order based on an alleged defect in an adjudication order that was entered six years previously. If this case is remanded back to the appellate court for review of the unfitness findings, I fear that Leona's permanency will be even further delayed. With regard to Oscar H's unfitness, the trial court held that he was asked repeatedly to do two simple things. And as the testimony of Mary Henderson of Catholic Charities showed, he didn't do those two very important tasks. He only attended two out of 100 medical appointments for Leona. So he wasn't able to learn from her doctors how to recognize when she was having a seizure, and what to do if she had a seizure. Oscar was also asked to attend her individual education program meetings, or her IEPs. She had those yearly from the ages of three to six. He never attended one of those IEPs. Now, Oscar H did go to Leona's school two or three times, but he told the school the only reason he was there is because the court made him go. Oscar H denied the extent of Leona's special needs, and told workers she wouldn't have any special needs at all if she would just return home to him. Oscar H did not make reasonable efforts or reasonable progress, and the trial court's unfitness findings should be infirmed. Thank you, Ms. Plain. Thank you, Your Honor. We ask that you affirm the trial court's rulings. Mr. Tinker. Good morning, Your Honors and Counsel. May it please the court, my name is Protaz Tinker, and I represent Oscar, the father of Leona. Some time back, I received an unsolicited letter from a parental organization, and the first sentence of the letter was, startling if informative. The question they asked is, did you know that today in Illinois, it's legally easier to seize a child from his or her parents than it is to repossess a car? Well, frankly, my first reaction was, are these people crazy? But as I listen and read the briefs of the state, I'm not so sure that the question was crazy, because the unfairness and the injustice in this case is equally startling. Your Honors, in a world fraught with irresponsible parents, this is the case of an exceptional man, a good, loving man. By the way, he came voluntarily to declare his paternity. He didn't have to. He would have melted into society. Nobody would know anything about it. But he decided to come by himself, and he declared paternity. He didn't want to dodge responsibility. He gave up his job at Sears, called his daughter and says, we will take care of the children. Now, in an environment where Bill Cosby has been berating parents for their irresponsible behavior that they don't care about their children, I think this man would have got a medal. But instead of getting a medal, what did he get? Termination of parental rights to his daughter, Leon. It's very important to keep in mind in this context that Oscar was a non-custodial parent, and that was stipulated, too, by all the parties. He was drug-free, and most of all, he never neglected, he never abused any of his children. Mr. Tinkoff, is it true that Oscar did not proceed with the service plan and attend to the needs of the child to learn how to take care of her? He attended as many as he could with the exception that he had transportation problems. And he did tell the people in charge of Catholic Charities that he had transportation problems. Instead of helping him, however, they never gave him any help. I can also say that way beyond nine months, beyond 12 months, this man was getting excellent reviews. Your Honor, let me read you a little thing. In an order, a permanence order dated 1999, it says, Father has made substantial progress towards the return of this minor. Most of all, it says, natural father has engaged in all offered and recommended services provided to correct the conditions which brought this case into the system. This is not a man that was hidden on his behind. If he were, he wouldn't get good reviews. He got good reviews. Mr. Tinker, how do we get past the jurisdictional issue here? The appellate court indicated that after they held the adjudicatory hearing invalid, or the dispositional hearing invalid, that it never reached the merits of the termination ruling. We've talked about that. Is this the only appellate court that's ever held that you can appeal? After termination, you can appeal an old adjudicatory order? No, that's taken a little bit out of context. Here is the point. The appellate court, as you know, Your Honor, has jurisdiction. It has even original jurisdiction to determine all kinds of matters pertaining to this case. And, frankly, the question of the order was not even necessary to decide because the court already found that there was evidence that was admissible, but the court ruled inadmissible. My understanding of what the appellate court did, unlike the other appellate courts prior, and I've got a, I think they were listed by the state's attorney, but a first district case, a second district case, a third district case, a fourth district case, every appellate court has ruled that I know of, with the exception of this appellate court, that the appellate court has no jurisdiction to review the legal sufficiency of the original adjudication order. And the problem that I see that we have here procedurally is, and that's why I'm asking what our task is going to be, is once they decided that that original adjudication order, which at least no other appellate court has held that they had jurisdiction to decide, once they hit that and said that was invalid, they didn't decide anything else. That's why I asked the state whether we would have to send this back if we agreed that there was no jurisdiction and remanded it to the appellate court to determine the termination proceeding. And yet the discussion, at least from your side, has been all revolving the facts of termination. Yes, but Your Honor, I think that the appellate court had basis for its action on at least three grounds. Number one, we have our state constitution in Article 6, Section 6. And if I may read the relevant part, it says the appellate court may exercise original jurisdiction where necessary to the complete determination of any case on review. The appellate court shall have such powers of direct review of administrative action as provided by law. As an important footnote, it's important to realize that we actually did not raise that question in my brief. On the other hand, since the case was already going back to the trial division, the court thought that it was important for the trial court to follow the law and put things in writing. That is the law. You did state it in Madison, even in Ray Arthur H., that the factual basis of the determination needs to be in writing. And that's what they will clarify. Remember, they did not just reverse. They remanded the case. Didn't we say in Madison H. 2-27-1 unnecessarily elevates form over substance and disrupts the adjudication of a minor for purely technical defects that do not prejudice the parties? We said it is unlikely that the legislature meant to include the formalistic technical requirements suggested by respondent, that being the writing. And the difficulty we have here is that we have no way of knowing whether oral findings were made at the hearing. And the appellant has the burden of presenting a sufficiently complete record. And we didn't have a record. We need to have a record. So we don't know whether there were oral pronouncements. Even if we get over this jurisdictional issue, we don't know whether there were oral pronouncements sufficient to comply with Madison H. And whose fault is that? Wouldn't that be the appellant's fault? No, Your Honor. You see, we have the record. But Oscar did not include a transcript from the 97th adjudicatory hearing in the record on appeal, did he? The transcript is nothing different than what was already on record. It had stipulations that Oscar was an uncustodial parent. And it spelled out the grounds why Sandra lost the children. But we don't have a record of whether there were stated oral dispositional findings at the dispositional hearing. Stated oral findings. The appellate court did not say anything different. It merely said, since this case is going to the trial division, please make sure you put your factual findings in writing. And I don't see what's wrong with that. As an administrative body, I think it has every reason to direct the trial court to follow the law. And the law says put things in writing. After all, why be implicit when you can be explicit? Frankly speaking, this should have been in writing. Okay, it wasn't. But why was the appellate court precluded from directing the trial court to please put things in writing? I think it was important. We also think that the appellate court had powers under Supreme Court 366A5. So it was within its right really to do what it was doing. It gave directives to the trial court. And we don't exactly see how it went beyond its jurisdiction. Besides, we have to remember that this is a case, a termination of parental rights. In Madison, in Ray Arthur H., we never went as far as termination of parental rights. Here, we have termination of parental rights, which is as ultimate for a parent as anything goes. Now, think of this. This is a process. Termination of parental rights comes at the end of a process. It's like an equation. An equation has components within it. If you want to determine the validity and verify that the conclusion is correct, how are you going to do it without looking at the components of the equation? I think it's important that the appellate court does look at all the factors involved, all the components, to make sure that the conclusion is correct. Otherwise, with tying its hands, it won't be able to do its job. What's the significance of the fact that Oscar stipulated to the facts of the adjudication? Does that have any meaning at all in this equation? No, it just was straight. He had just come to court and declared his paternity, and he was simply saying, agreeing that he was a non-custodial parent, which was true. So didn't he stipulate to the facts upon which the child was found to be neglected and abused? No, he did not, Your Honor. The only thing stipulated to was, first of all, that he was a non-custodial parent. Secondly, according to the transcript, he stipulated that Sandra was drug-addicted, and that when she had... I understand what you're saying, but it's also pretty clear that the finding at that stage is whether the child is abused or neglected. It doesn't have to be tied to both parents. It just has to be to the fact that the child is abused and neglected. If he stipulated to what the mother did, that was the basis of the neglect, wasn't it? But it had to do with Sandra W. I understand that. It never had anything to do with Oscar H. That's what Arthur H. says, though. What Arthur H. says, even though one parent may be blameless, the child is still neglected and abused. Absolutely, Your Honor, we agree. But it also says, especially when you have two parents, that you have to determine as much as possible which of the parents is responsible. In this case, we have two parents. And the whole case started with Sandra W. And it seems the trial court forgot that Oscar had joined. So everything was about Sandra. It was not about Oscar. Except, sir, that perhaps the trial court heard the facts that he did not follow the service requirements that he was supposed to do. He followed the services, like I said. The counseling counsel says that he didn't attend doctor's appointments. He did go to school once and told the teachers there that he was only there because the court ordered him. And he also stated that he didn't think the child had special needs. So couldn't the court find that his rights should be terminated based on the fact of those facts? No, I don't think so, Your Honor, because the man has excellent reviews all the way through to 2001, I believe. So those facts are not in any reviews? I'm sorry? Those facts are not in any of the reviews? Well, they are in the reviews, in the reports. After all, how did he get the rest of the kids if he was that of a useless parent? Remember, he had four kids returned to him. But each child's adjudication is based on that particular child, isn't it, as to him? Yes, each child has his problems, but these are siblings. They had similar medical problems and so on. The man's dispositions and so on were all in order, and he said he was doing a good job, and that's why he got his four kids back. The problem was only with Leona. Is it your position, counsel, going back to the jurisdictional issue, that because this is a termination of parental rights cases, that those cases that we've alluded to don't apply, that since it's a termination of rights and the stakes are so big, that the court ought to be able to go back and look to everything back to the beginning? No, the cases do apply, Your Honor, but we have to limit them to their own facts. We have to accept that in Ray Madison and in Ray Arthur H. didn't go to termination of parental rights. This case goes further. It goes to the termination of parental rights, and that is the problem, because at this point we are taking the most serious action that can affect a parent anywhere. That's when his rights are exterminated, period. Counsel, if we may, if we look to the underpinnings of why there's an appeal provided after the dispositional hearing, it's because of the need to give some finality to the rulings as they proceed through the process. Isn't that correct? I think at that point, really, the state, in its argument, kind of mistook finality for infallibility. Well, let me ask you this. Just a minute. All right. If we were to follow your argument here, it would then thereafter be true in every termination appeal that you could, if you will in your language, examine all the parts of the equation. And otherwise, in every case, you'd be put in a position where you'd have to do over what had already been done. If it's a mistake. I believe injustice should always be open to review. And, of course, we are seeking justice here. But the fact of the matter in this case, and I won't assign fault to anybody, but it is an example of how bizarre our efforts can be when we try to do justice and we don't do it in a timely fashion. Whatever else is true about this case, the fact that this 11-year-old child is still waiting a decision on this issue is a negative thing, isn't it? It certainly is. And some might argue, and the State did, one of the reasons that's true is because we did, in fact, relitigate something that what appeared to be relative to other cases, something that had already been decided. Your Honor, it is the State that appealed. Otherwise, the case would have gone back to the trial division. Probably things would have come out different according to the directives of the appellate court. But, of course, as we continue, it takes more and more time, sadly for your Honor. Well, Mr. Tinker, do you need the ruling of the appellate court to prevail on the termination determination? Do you need the ruling of the appellate court to indicate that the dispositional hearing, there was a foul at the dispositional hearing stage? It sounded like you came up here arguing that termination wasn't proper in this case. It was improper. All right. Let's stop there. The appellate court didn't get there because they looked at this dispositional hearing, which, by the way, are rules. We don't have to go past our rules. 662A provides that a disposition order is a final order. So this jurisdiction issue is important to the court because our own rules say that it was a final order that wasn't appealed. So my question to you is, do you need, let's say this court decides to go ahead and determine whether termination was proper in this case, are you okay with that? Or do you need the ruling of the appellate court that the adjudicatory hearing was off base? Your Honor, there is some kind of thinking here that there is an obligation to appeal, which we don't quite understand. The father had nothing to appeal. So what if the parent has nothing to appeal? I mean, the Supreme Court rules talk of may appeal. Now, if you appeal, then you better do so within the 30 days. That is when jurisdictional problems arise. Oscar did appeal, right, after the termination. I'm so sorry. Didn't Oscar appeal at some stage? No, he didn't. He didn't appeal the adjudicatory order. No, I understand that. What about the termination order? Yes, he did appeal the termination. He did appeal the termination. Yes. And then the appellate court went back to the adjudicatory order that he didn't appeal. So my specific question is, do you need the finding of this appellate court as to the adjudicatory order being wrong to prevail in your argument that Oscar's rights shouldn't have been terminated? Yes, but it's only asking the trial court to follow the law. That is what the Juvenile Act says. Put things in writing. That's about it. Counsel, if I may try. If you were to lose the jurisdictional issue, I know you don't think you should. But you can see that that's a possibility, right? Wouldn't you still be in the position to question the termination, separate and apart from the jurisdictional issue? Absolutely. And I think that's what the Chief Justice was asking. Absolutely, because, first of all, we have the problem. He has suggested that rather than remanding that to the appellate court, this court should take the record as it now exists and make that determination of whether or not the parental rights should have been terminated. This court has all the powers to do exactly that. In our opinion, we, by the ruling of the appellate court, we think that it was on the right path. After all, it didn't just reverse and stop. It reversed and remanded with directions, telling the trial court exactly how it should proceed. And, by the way, other than the jurisdictional point that you raised, the court had every reason to still reverse and remand based on the exclusion of the evidence of other children, which, in our opinion, should never have been excluded. It should have been considered. And the reason it should have been considered is that the kids had gone through the same court system, through the DCFS system, together. Your argument is that that evidence would have been probative on the issue of fitnesses. Very much so, Your Honor. Very, very much so. Thank you, Mr. Tinker. Your time is up. Thank you. Ms. Falls? If I can, just so I can follow up on the last area, I think that you might have been going there anyway. Or maybe the issue on the termination is your co-counsel's part of the argument. Is that correct? Here's the question. Why isn't the evidentiary question true? Why isn't the evidentiary question true? Because it's treated as a matter of weight rather than admissibility. As far as the parenting of the other children? Right. The problem with the way that that was handled in this case is there was never a nexus as to he can parent the other children that don't have special needs. The question is, can he? Well, they at least have some special needs. They shared, maybe not to the same extent, but they shared the same maladies that Leona did. As far as the fact of being born cocaine positive, yes. As far as several of them being born with syphilis, yes. However, none of them have an IQ of 53. None of them have a seizure disorder. None of them have the delays that she has, the emotional conditions that she has, the mental health issues that she has. That is something that throughout the course of this case has been quite troubling because there is this illusion that the other children are the same as Leona, and they simply are not. And a review of the record will establish that. Is it your position that the evidence of fitness as to the other four children is in no way probative as to Leona? Absolutely. Because whether or not the biological father is an exceptional man and a good and loving man towards the two children he had with the biological mother before Leona and the three more that he had with her after Leona doesn't address how he would parent Leona. In fact, if anything, it makes our case for termination even stronger. Because what the evidence establishes is that he thinks Leona needs discipline. He thinks that because she's in foster care and because she needs discipline, that is why she is the way that she is. And there's even a quote in the record in the bonding assessment where he says that he would like to teach her a better way of doing things because she doesn't act the way the other children act. So that is why the focus needs to be specifically on Leona. Because if he can parent these other children, that's wonderful. But that doesn't tell us whether or not he can parent Leona. And as far as the states wanting to take Leona away from him, that is not the case and the record bears this out. For a number of years, there were agreed permanency orders where we were attempting to return Leona home. The people would have been pleased if Biological Father would have stepped up to the plate as he did for his other children and learned how to take care of her. It's quite troubling that she's 11 years old and she is either not at home with a father who can take care of her if she has an epileptic seizure and can understand that she has mental health issues or that she is in an adoptive home and she doesn't have either one of these things. And if Biological Father had done what he was supposed to do, we certainly wouldn't be here. But part of the reason that we're here is Biological Father as well as the appellate court don't quite come to the proper conclusion as to what it is we're looking at in these cases. As far as the fact that Biological Father was non-custodial, that doesn't absolve him of the fact that she was an abused and neglected child. This court has addressed that, a number of the appellate courts have addressed it. The issue is, was she an abused and neglected child, and yes, she was. We have many cases where we don't know if the abuse and neglect was because of the mother or because of the father. But the child is still abused and neglected. So that is a problem, number one. The appellate court was also not quite getting that they didn't have, it wasn't proper for them to go back to the adjudication hearing. It was absolutely unnecessary and improper for them to do so. Because as has been stated, if we get to a termination, which is years and years later, and we can go back, the appellate court can go back and look at a 10-year-old adjudication hearing, what is the purpose of the adjudication hearing being appealable after the disposition? That is when it becomes final. Did the appellate court reach that sua sponte? Yes. It was not raised by counsel. And we would argue that it couldn't have been raised by counsel because he stipulated in the first place. But even if it had been raised, there was no reason to go back to that issue all these many years later. As far as... Do we have any idea why this case has really taken so long? Going back from the beginning or just the last four years? At any point, but certainly four years from the termination. Well, in the beginning, as far as when it was in the trial court, the hope was the biological father would step up to the plate and learn how to take care of Leona. And he was given opportunity after opportunity and was told service plan after service plan that he needed to do that. Coupled with the fact that he had children with the biological mother in 1993, 1995, 1996, 1998, 1999, and 2001. So there was always a question as what was their relationship and why do we continue to bring these children that are abused, that are exposed to cocaine and syphilis into the world. So biological father would say he wasn't having a relationship with her and she would continue to have children by him that he would ultimately take care of. And the fact that he's taking care of those other children, that is the right thing to be doing because he is stepping up to the plate for those children. So that is what took the time in the trial courts. And the biggest portion of time that was taken in the appellate court was the case was fully briefed and sitting in the first district appellate court for 15 months before there was a decision the first time. That was obviously before this court changed its rules and started expediting our cases so that things like this wouldn't happen. And as far as counsel's suggestion that we shouldn't have brought the appeal after the appellate court did what the appellate court did, obviously we couldn't let an opinion stand that flies in the face of what this court has done and what the juvenile court has done in trying to get these children permanency. Because that is what we are after here, is getting these children permanency. If their families can be fixed, let's get the children home. If the families can't be fixed, then it's our obligation to try and find them a better place to live, somewhere where they can go forth and be children and be the best that they can be given their circumstances. And based on everything that has gone on in this case, the people request that your honors review the unfitness substantively. The evidence of the unfitness has not changed, will not change, and is there. And should you decide to send it back for a best interest hearing or back for a permanency hearing to the trial court so that the trial court can have a full hearing on the record and find out everything that's been going on in the last four years, that would be fine too. The most important thing is just let's get this moving in a way that Leona can finally have some permanency and try and get on with her life. Thank you, Ms. Falls. You don't have anything? Thank you, Ms. Falls. Thank you, Ms. Plain. Thank you, Mr. Tinka. Case number 103620 and 103639, consolidated in Ray Leona W. v. Oscar H., is taken under advisement as agenda number 13.